UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


DEMETRIUS BARBER, #K6330                                                    PETITIONER

VS.                                                  CIVIL ACTION NO. 1:04CV387-GHD-JAD

DONALD CABANA, ET AL.                                                     RESPONDENTS


## REPORT AND RECOMMENDATION

The undersigned has reviewed the petition for habeas corpus, the answer and the record. Demetrius Diontra Barber was convicted of capital murder in the Circuit Court of Clay County, Mississippi on April 12, 2001. He was sentenced to life without parole. His conviction was affirmed by the Mississippi Supreme Court in a unanimous opinion on March 13, 2003. His petition for post conviction relief was denied by the Mississippi Supreme Court on October 13, 2004. He timely filed his petition for habeas corpus with this court asserting multiple grounds for relief which are individually addressed below.

## SUMMARY OF TRIAL PROOF

Scotty McCain went to the trailer home of Glenda Cooperwood on Friday, December 22, 1998, around eleven in the morning. Cooperwood's cousin, Kevin Wilson, was also at the trailer. McCain gave Cooperwood a hundred dollars from his wallet to buy cocaine. He showed her he had a substantial amount of cash. Cooperwood was unable to purchase cocaine and returned to the trailer. Demetrius Barber arrived at the trailer some time later. Cooperwood and McCain went outside with Barber. McCain purchased crack cocaine from Barber. Barber was able to see the cash in McCain's wallet. McCain, Cooperwood and Wilson then smoked the cocaine in the trailer.

Barber, who had remained outside came in the trailer asking to use the bathroom. He reappeared with a gun demanding McCain's money. McCain responded to the demand with profanity. Barber shot McCain and demanded his money again. When McCain did not comply, Barber shot him again. After a scuffle with Barber, and after using Wilson as a shield, McCain managed to get out of the trailer, into his truck and drive away from the scene. Barber then threatened to kill Cooperwood, Wilson and their families if they told the police what had happened. Barber instructed the witnesses to tell the police that Dee Dee had shot McCain.

Because Cooperwood did not have a telephone or a car, she did not report the shooting immediately. After an A. J. Eaton arrived at the trailer, he took Cooperwood to a neighbor's house to call law enforcement. She and Eaton returned to the trailer. After observing the shells, Eaton said the gun used was a .45 and that McCain would not have gotten far. Eaton found McCain dead by the side of the road. He had bled to death.

Cooperwood and Wilson initially told police that Dee Dee had shot McCain. With further questioning, assurances of protection and the threat of being arrested as accessories, Cooperwood and Wilson informed law enforcement that Barber was the one who had shot McCain. Both testified to the shooting of McCain and the threats to their safety.

Other witnesses included Cooperwood's daughter, Ocanna, and her friend Tawana Dawes. The girls each confirmed that they had been at the trailer while McCain was there. They each knew Barber, and had seen him outside the trailer when they left to go to a hair appointment. L.J Echoles testified that he had a .45 caliber gun he had reported stolen in the months before the murder. Having been told by Charlie McGregory that Barber had his gun, he confronted Barber. Barber claimed he bought the gun, but offered to sell it back. McGregory testified, that days after it had

been stolen, he had seen Barber with Echoles' gun. Dr. Stephen Hayne testified to the cause of death. An expert from the state crime lab established that the weapon used to shoot McCain was a .45 caliber gun. The murder weapon had not been located. Various law enforcement officers testified that Cooperwood and Wilson appeared to be very frightened at the time of the murder.

## SCOPE OF REVIEW

In considering the petition the undersigned has considered the limited scope of the federal court's review. Each claim made here has already been considered and rejected by the Mississippi Supreme Court on the state petition for leave to file a habeas corpus petition. 28 U.S.C. § 2254(d) provides:

> (D) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Each of the petitioners claims as numbered by the petitioner, are analyzed below.

1.  Barber asserts that his 5th Amendment rights were violated by an "improper" indictment. However, the argument he sets forth is not that the indictment was defective, but that the state failed to prove his guilt of the murder and the underlying felony, armed robbery. This is a challenge to the sufficiency of the evidence.

Though the allegation regarding the indictment is conclusory, the indictment has been reviewed.(R. 1 p. 7). The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no

3

jurisdiction. *Uresti v. Lynaugh*, 821 F.2d at 1102 (citing *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984)). For an indictment to be "fatally defective," no circumstances can exist under which a valid conviction could result from facts provable under the indictment with state law providing the reference point for determining an indictment's sufficiency. *Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir. 1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984). In *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985) (citing *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983)), the United States Court of Appeals for the Fifth Circuit held that:

> An indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against him and (2) enables him to plead an acquittal or conviction and bar a future prosecution for the same offense.

The indictment was clearly sufficient to meet this test. The indictment charges him of unlawfully causing the death of McCain, with or without design, while in the commission of an armed robbery. This assertion is clearly without merit.

Treating this claim as a challenge to the legal sufficiency of the evidence, this court is mindful of its limited role. A federal court on habeas review may not "make its own subjective determination of guilt or innocence," *Jackson v. Virginia*, 443 U.S. 307, 319 n.13, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In this function: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 n.12, 99 S. Ct. at 2789 (citations omitted). The court is not at liberty to substitute its conclusions for those of the jury.

Applying that standard, the court finds the record does contain sufficient inculpatory evidence from which a rational trier of fact could have found Barber guilty beyond a reasonable doubt. Two eyewitnesses testified to Barber's use of a gun and his demand that McCain give him his money.

4

Contrary to Barber's contention, this is sufficient proof of armed robbery. The definition of armed robbery in Mississippi is the taking or "attempt to take" personal property from a person, against his will, by either violence or threat of violence using a deadly weapon. The fact that Barber did not obtain McCain's cash does not change the offense he committed to something less than armed robbery pursuant to § 97-3-79 Miss. Code Ann. The evidence fully supports the jury's finding that the killing was done in the commission of the armed robbery making the offense capital murder. This claim is without merit.

2. Barber asserts the prosecutor "erred" in placing the government "behind the creditability"(sic) of the state's witnesses causing prejudice to him. He claims that the prosecution improperly vouched for Glenda Cooperwood and Kevin Wilson, the eyewitnesses to the crime. There is no question that it is improper for the prosecution to vouch for its witnesses, *United States v. Washington*, 44 F. 3d 1271, 1278 (5th Cir. 1995), but the record shows no improper vouching for witnesses. In his opening statement, the prosecutor did what every prosecutor would do. He set forth a summary of the expected testimony. Once the prosecutor stated flatly that what he was saying was "the truth," and that was in conceding that the victim and one of the witnesses had been looking to purchase cocaine. This was not done in the context of vouching for anyone's credibility, but as an admission of uncontested facts unfavorable to the prosecution. This claim is without merit.

3. Barber alleges the that the trial court erred in it admitting the testimony of Charlie C. McGregory based upon an alleged discovery violation. McGregory was disclosed as a trial witness the day before trial. Barber alleges that he was prejudiced by a lack of time to investigate "into the reason why Charlie C. McGregory wanted to testify after waiting three years." The record shows that

5

the state revealed the name and expected testimony of this witness right before trial. It was newly discovered by the prosecution and promptly disclosed.

Following state procedures, the trial court, on objection from defense counsel, allowed the defense attorney to interview McGregory before he took the stand. Based upon the interview, defense counsel withdrew any further objection. McGregory was cross-examined about a twenty year old felony drug conviction. The jury was told that McGregory had a daughter with Cooperwood. There is no showing of any evidence that a further investigation would have revealed. Treated as a mere state evidentiary matter, this claim presents no constitutional issue on its face. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L.Ed.2d 306 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). *Id* at 348-9, 113 S. Ct at 2121. Habeas corpus jurisdiction is invoked with such a claim solely on due process grounds, if at all. "[E]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such." *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1992)(citing *Estelle v McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L.Ed.2d 166 (1991). "Errors of state law rise to constitutional dimension only if they so infused the trial with unfairness as to deny due process of law." *Derden,* 978 F.2d at 1458 (citing *Lisenba v. California*, 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941). The admission of this testimony was allowable within the discretion of the trial court under Mississippi evidentiary rules. A review of the record reveals that Barber received a fair trial. This assignment is without merit.

4. Barber asserts that the trial court erred in allowing Kevin Wilson to testify as a witness. Barber contends that Kevin Wilson misidentified him and therefore the entire testimony should have been excluded. He alleges, without supporting proof on the record, that Kevin Wilson gave a

statement describing Barber's clothes at the time of the murder. He says that description matches the clothing Barber was wearing in the lineup photograph. The statement and the photographic lineup have not been included in the record by the petitioner. There is nothing in the trial record about what clothes Barber was wearing the day McCain died, nor any showing that he was not, in fact, wearing the same or similar clothes. There is nothing in the record to support any suggestion of misidentification, particularly when three other individuals who knew Barber well placed him at the scene immediately before and/or at the time of the shooting. Barber has not made any showing that there was anything suggestive about the photo lineup. This claim is without merit.

5. Barber asserts that the failure to produce the murder weapon is fatal to the state's case. The record shows that McCain was shot on May 22, 1998, and Barber immediately thereafter went to Michigan, returning to Mississippi on May 27, 1998. The evidence as set forth in section 1 above is legally sufficient to support the conviction. Barber also asserts that the prosecution had to have a law enforcement officer independently corroborate that Echoles reported his gun stolen. This argument is frivolous.

6. Barber claims his due process rights were violated by the court allowing Glenda Cooperwood to testify on behalf of the prosecution because of her prior misdemeanor conviction for giving a false statement to a police officer. Under Mississippi law, a witness is not competent to testify if they have been convicted of perjury or suborning perjury. Cooperwood testified to this conviction, so the jury could weigh it in considering her credibility, but it did not render her incompetent to testify under Mississippi law. Therefore, there is no error of state law. Even if the trial court and the appeals courts had misapplied state law, Barber would have no claim in this court in accordance with the reasoning and authorities set forth under section 3 above.

7. Barber makes claims that both his trial counsel and appellate counsel rendered ineffective assistance of counsel. To establish ineffective assistance of counsel, Barber must show, " (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense." *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674 (1984). The deficiency determination is not unguided. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689,104 S. Ct. at 2065. The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decisions in a "highly deferential" manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994); quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. If counsel's performance is deemed to have been deficient, "then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

Each of these claims of ineffective assistance of counsel is addressed below.

a) Barber's trial attorney Brown made a record, outside of the presence of the jury, of a plea offered to Barber. Barber was given a chance to plead to manslaughter. Against the advice of his attorney and his parents, Barber demanded a trial. There is no error in having placed this information in the record. Brown is accused generally of failing to investigate the case properly. Barber does not show what investigation was or was not done; what he claims should have been done; or what evidence or testimony would have been uncovered with additional investigation. Barber has made

no showing of any error by his attorney nor any showing of prejudice to his defense. This claim is without merit.

b) Barber claims his lawyer failed to object to a leading question on page 470. The judge stopped the prosecution and warned against leading. No objection was needed. Barber claims that his lawyer failed to object to leading questions all through the trial though but fails to cite any other instances. As a matter of strategy, lawyers do not object every time there is some arguable legal basis to object, and competent lawyers may occasionally miss an objection that they would otherwise make. Neither of these amounts to constitutionally deficient assistance of counsel. This claim is without merit.

c) Barber claims his trial counsel was ineffective in his cross examination of Glenda Cooperwood. Barber alleges further cross examination would have revealed that Cooperwood mentioned "another" name as the shooter to A. J. Eaton "a suspect by the name of Dee Dee was mentioned." Another instance of Cooperwood mentioning Dee Dee was cumulative since it was uncontested that she had given several statements naming Dee Dee, as the shooter. Counsel's performance was not deficient and there is no prejudice to Barber. This claim is without merit.

d) Barber faults his attorney for not grilling Kevin Wilson about the fact that a cousin dropped him off at Cooperwood's trailer, trying to suggest that the cousin could have been a suspect or Dee Dee. This is pure speculation. This claim is without any merit.

e) Barber claims his attorney failed to cross examine Wilson about the name he gave A. J. Eaton. Wilson had admittedly told the police in two statements that Dee Dee had shot McCain. As with Cooperwood, this additional mention of Dee Dee was cumulative. The failure to pursue this

cross examination is not deficient performance at the trial nor does it indicate the failure of his attorney to "investigate" Eaton's statement.

      f) Barber claims that Brown should have continued his cross examination of Kevin Wilson about his and Cooperwood getting together to talk about the facts the night after the shooting. Wilson denied that he and Cooperwood got together to get their stories straight. Brown obtained Wilson's admission that he was told that he might be arrested himself. On the record there is no deficiency in the cross examination, and nothing to indicate that repeating the question would have served any purpose, save drawing an objection and possibly irritating the judge and jury.

      g) Barber quarrels further with the cross examination of Wilson. Barber's counsel asked "Well, then how--how come they (law enforcement) didn't know you were telling the truth, when they were saying Dee Dee--" The prosecution objected. The objection was sustained and counsel moved on. Barber claims his lawyer was ineffective in not asking the question again. There is nothing wrong with counsel moving on after the objection was sustained.

      h) Barber quarrels that his attorney failed to bring to the judge's and jury's attention that Kevin Wilson said Dee Dee was from Arkansas and that Wilson at the time of trial lived in Arkansas. His attorney did indeed bring out this coincidence, prompting the prosecution to address on redirect, when and why Wilson had moved to Arkansas. Wilson moved to Arkansas a number of months after the killing. This claim is without merit.

      i) Barber claims his attorney violated his Fifth Amendment rights and Sixth Amendment rights in his cross examination of Tawana Deanes. Deanes testified that she had seen Barber outside of the trailer that day. Brown asked her if she had seen Barber shoot McCain, knowing her answer would be that she had not. There is nothing wrong with this cross examination.

j) Barber claims that his attorney failed to investigate the statement of L. J. Echoles. Echoles testified that he had reported his gun stolen to law enforcement. Barber faults his lawyer for not calling the officer to testify as to whether the report had in fact been made. There is nothing in the record to indicate that his lawyer was guilty of any failure to investigate. There is nothing, not even Barber's speculation, about what this missing witness may have said. There is no indication that the officer would have done anything other than confirm Echoles' testimony. There is no merit in this claim.

k) Brown cross examined Charlie McGregory about the fact that he had no personal knowledge that Barber shot McCain. This does not represent a violation of Barber's Fifth Amendment rights, nor is it any indication of a conflict of interest. It is routine cross examination.

l) Barber claims Brown had a conflict of interest. He says his conflict of interest is demonstrated because he discussed the case with law enforcement. Brown cross examined an Officer Perkins trying to establish that law enforcement was looking at Cooperwood and Wilson as possible suspects. He asked Perkins if he (Brown) had ever talked to him about the case. Perkins then volunteered that Brown had said he was trying to get his client to plea bargain. The court quickly intervened, without necessity of an objection, admonishing the witness to be responsive to the question and instructing the jury to disregard the last statement. The officer then denied twice having told Brown that he thought the "whole bunch of them" including Wilson and Cooperwood should be locked up. In his motion for a mistrial defense counsel denied talking to Perkins about any plea bargain. Nothing in the record indicates any conflict of interest in this regard. Speaking with law enforcement is a legitimate means of investigating the matter on behalf of a client. There is no merit to this claim.

11

m) Barber once more accuses his attorney of not fully cross examining a witness. He claims Brown should have quizzed Officer Crusoe about the alleged similarity between Wilson's out of court description of Barber's clothes on the day of the shooting and the clothes Barber was wearing in the photo lineup. There is nothing in the record to support this claim. Barber has not provided any proof that there was any similarity in clothing. Barber claims one recorded statement, not in the record, includes a question from the officer to Wilson asking if Wilson had been threatened, suggesting that the officer's question was the genesis of the 'threat' story. Nothing in the record supports such a claim. The record to the contrary shows that both eyewitnesses told the officers about being threatened by Barber. There is no merit to this claim.

n) Barber faults his attorney for not asking for a continuance or a mistrial after the belated disclosure of Charlie McGregory as a prosecution witness. The trial judge allowed counsel to interview McGregory. Barber claims time would have allowed his attorney to ask where McGregory was the day of the shooting. Nothing in the record demonstrates this question was not asked in the interview and nothing indicates that there was any answer or information that would have aided Barber's defense. Barber claims his attorney could have brought it to the court's attention that McGregory could have gotten the gun since McGregory kept it himself. This is in the record because the prosecution had already solicited this information from McGregory. The court cannot say there was any error in not asking for additional time. There being no grounds for a mistrial, the failure to request one was not deficient performance.

o) Barber revisits the cross examination of Officer Crusoe. He claims Crusoe should have been cross examined about a supposed discrepancy on whether Crusoe knew Barber was a suspect on May 23rd or May 24th. The contradiction is allegedly shown in the statement of a Chris Harris,

12

which is not included in the record. Barber claims his attorney was aware of the statement, having referred to it in questioning another officer. Clearly counsel knew of the statement and chose not to pursue this line of questioning. This is a matter of trial strategy. This cannot be said to be deficient performance.

p) Barber questions the failure of attorney Brown to call Chief Deputy Bob Harrell, one of the investigator's during the guilt phase. He does not suggest any exculpatory testimony that Harrell would have offered. His attorney called Harrell on the penalty phase to establish that his client had only minor traffic offenses; had turned himself in; had waived his rights; and was not hostile. Clearly his attorney had investigated what Harrell had to say and decided to use him where his testimony would be helpful. Nothing in the record suggests anything other than a

> "conscious and informed decisions on trial tactics and strategy [that] cannot merit habeas relief unless they were so ill-chosen that they permeate the entire trial with obvious unfairness. *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir.1983). Furthermore, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065." *Livingston* v Johnson, 107 F.3d 297, 306 (5th Cir. 1997

The courts will not second guess strategic decisions by trial counsel, especially where the record supports the prudence of the decision.

q) Barber claims his attorney prejudiced his defense by not calling Joe Huffman. He claims Huffman could have established that the two eyewitnesses had been threatened with arrest as accessories. Given that the two eyewitnesses admitted they were told they would be arrested as accessories if they did not tell the truth, the decision not to call the officer was a matter of strategy for trial counsel. There is also no showing of prejudice.

13

r) Once more Barber claims error in the cross-examination of Wilson, claiming his lawyer should have impeached him with his May 24, 1998, statement. The statement is not in the record. Barber claims Wilson "stated they have to flee the scene until Glenda Cooperwood convince Kevin that they have to call the police." Since this proposed cross examination would have served only to highlight Wilson's high level of fear, no prudent attorney should have pursued this examination.

s) Barber claims that Brown provided ineffective assistance of counsel in not calling Shelina Williams as an alibi. Williams gave a statement, not in the record, that she saw Barber on the day of the shooting. In his state petition he said Williams saw him later in the day, apparently well after the lunch time shooting. There is nothing to indicate that she could provide an alibi. The Fifth Circuit has consistently held that "'complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy,and because allegations of what a witness would have testified are largely speculative.'" *See United States v. Cockrell*, 720 F.2d 1423, 1427 (5 Cir. 1983)(quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). *See also Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); *Washington v. Watkins*, 655 F.2d 1346, 1363-1364 (5th Cir. 1981). "Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.'" *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001)(quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)(citations omitted). There were four witnesses who place Barber at the scene shortly prior to the shooting and an alibi witness who would have been contradicted if Williams tried to provide an alibi for the period of time right after the shooting. If Williams saw him even later in the day, she is not an alibi at all. There is nothing in the record to indicate that the failure to call the witness was unreasoned or unreasonable. There is no showing of prejudice.

t) Barber argues with the failure to call Carlos Cummings as a witness. Cummings allegedly gave a statement that he was at Cooperwood's home on the day of the killing. Cummings would supposedly establish that several people had "been by" the trailer the day of the murder and that he saw Tawana Deanes mini-van parked at the trailer. Apparently Barber thinks this impeaches the girls' testimony that they saw Barber outside of the trailer when they left. Cummings asserted testimony does not contradict Ocanna Cooperwood's or Deanes' testimony. Both girls testified that they had returned to the trailer and gone into the back of the trailer to perm their hair. They were there for thirty to forty-five minutes. When they left both said they saw Barber outside. That Cummings could have "been by" the trailer and seen Deanes' van, without Deanes or Cooperwood seeing Cummings, does not contradict either witnesses' testimony. Cummings, per Barber, said he saw the van, not that he saw Deanes. Glenda Cooperwood had confirmed that Carlos had been to the trailer prior to the shooting when she and McCain were making their purchase from Barber. Brown might not want to call a witness who would put his client at the scene of the crime. Even assuming that Cummings would testify as Barber claims, his testimony is cumulative, of little relevance to the case, and less help to Barber.

u) The defense, with the two eyewitnesses' inconsistent statements in hand, tried to suggest that Glenda Cooperwood and Kevin Wilson had been the true culprits and concocted the story seeking to blame Barber for McCain's death. The defense theory was that Wilson and the victim scuffled; that he or Cooperwood shot him and transported his body from the trailer to where he was found. Cooperwood admittedly had removed a blood covered sheet from the couch. She admitted picking up a shell casing and throwing it in the trash. The defense theory was that these two were going to hide all evidence of the crime and not report the crime, apparently being foiled in the

15

original plan only by the untimely appearance of A. J. Eaton. In summation, the prosecutor pointed out the only inconsistency in the statements and testimony of the eyewitnesses was the name of the shooter, and that Barber's threats explained the inconsistency. He pointed out that Echoles and McGregory would have to be in on the deal to frame Barber. If McCain was transported after he died, he was transported in the driver's seat since that is where the blood was. The prosecutor pointed out that parts of any conspiracy had to have been put in place when Cooperwood and Wilson were high on cocaine. They would have had to have had the presence of mind to pose the victim with a piece of rope that he apparently had been trying to use as a tourniquet. They would also have been leaving three thousand dollars on a dead man. The prosecutor said, "This same person came up with this incredible conspiracy, bigger that the -- the John F. Kennedy murder, and she's high on cocaine...." It was one conclusory statement in a rebuttal to the defense that Cooperwood and Wilson had committed the crime, attempted to cover up the crime and had framed Barber. It is not clear what objection Barber thinks should have been made, but this one isolated comment surely did not alter the outcome. There is no merit to this claim.

v) Barber claims his lawyer should have called A. J. Eaton. There is no showing that Eaton's testimony would have added anything to that of the two eyewitnesses. There is no showing that the failure to call him was professionally unreasonable and no reason to believe that calling him would have had any probable impact on the result. This claim fails.

w) Barber blames his attorney for not objecting to a note the jury sent to the judge. Early in the trial the jury, which was sequestered, sent a note to the judge indicating that they were willing to work very late to get the trial over. This does not indicate as Barber states that they had already made their minds up. The lawyer did not make a mistake in not objecting.

x) He claims his appellate counsel was ineffective in "not fully wrieting (sic) defendant Direct Appeal where throughout the trial transcripts plan error's and Constitution errror's was made as of defendant rights...." The record does not bear out Barber's claim. Appellate counsel challenged the trial court's refusal of a manslaughter instruction; the failure to grant a mistrial over the volunteered comment about the plea bargain; and whether the trial judge should have granted the motions for directed verdict, judgment notwithstanding the verdict or for a new trial. These issues were competently presented. Appellate counsel's conduct would be deficient if he had argued all of the errors asserted by Barber as they are without merit.

While much of the above discusses what is not in the record and why Barber's claims fail for his failure to present supporting evidence, some of what is in the record should be noted because it is telling about the type of representation Barber received. Barber's trial counsel filed the appropriate pretrial motions. He filed for discovery; obtained an order that all proceedings be recorded; requested and obtained continuances for additional time to prepare; moved for and obtained an order to sequester the jury; moved to suppress evidence seized in the search of Barber's residence; and requested and was granted a special venire and a jury questionnaire. He did not move for a change of venue, because the defendant waived his right to file the motion. He filed the appropriate notice of alibi and moved for a speedy trial. He obtained a favorable plea offer which his client surely now wishes he had accepted.

At trial, he made sure the jury did not see Barber in handcuffs or shackles. He moved for a mistrial when Barber indulged in an outburst in front of the jury during voir dire. Per his motion, individual voir dire was conducted in the death qualification process. He presented a theory of defense that was reasonable under the circumstances. He conducted appropriate direct and cross

17

examinations. He moved for a mistrial after the law enforcement officer volunteered a comment about plea bargains. He presented proof and argument that helped to persuade the jury to spare Barber's life.

Post verdict he sought leave to examine a juror about the impact on deliberations about that volunteered plea bargain testimony and filed the normal post trial motion. His handling of the case was not perfect. Perfection exists only for make believe attorneys like Perry Mason working from a script, but his representation of Barber was good. He was obviously prepared and experienced. The record demonstrates that Barber was competently represented and received a fair trial.

Building on the record made by the trial attorney, appellate counsel selected and focused on issues with some chance for success. That the appeal was unsuccessful does not mean that it was not argued capably.

There is no merit to any of the claims of ineffective assistance of counsel. None of the claims made by Barber show constitutionally deficient conduct. There has been no showing of any prejudice to Barber.

8. Barber claims Officer Crusoe committed perjury during the trial. Crusoe, testifying almost three years later, said that he had heard about Barber as a suspect in the case when the two eyewitnesses identified him as the shooter on May 24, 1998. Barber claims that Crusoe had to be perjuring himself because he supposedly asked a Chris Harris the day before if he knew Barber. Aside from the fact that Harris' statement is not included in the record, this is not proof of perjury. The officer may have been mistaken about whether he found out Barber was a suspect on May 23, 1998 or May 24, 1998. He also may have been aware of Barber's presence at the scene prior to the shooting without Barber being identified as a suspect on the earlier date. In any event, exactly which

of these two days Crusoe determined or was advised that Barber was a 'suspect' is not material to the outcome. This claim is without merit.

9. This is a rehash of Barber's claims about Wilson's inconsistent statements regarding Dee Dee and that Wilson said Dee Dee was from Arkansas. The question of Wilson's credibility was for the jury. As discussed earlier, the evidence was legally sufficient for the purposes of habeas review. This claim is without merit.

10. Barber again points to assorted claimed deficiencies in the proof challenging its sufficiency. Repetition of this claim makes it no less meritless.

11. Barber claims error because his defense attorney was not allowed to impeach McGregory with a misdemeanor conviction for possession of drug paraphernalia. This decision was correct under Mississippi law. Mississippi Rules of Evidence 609.

Based on the foregoing review of each of the petitioner's claims and the record, the undersigned recommends that the petition be dismissed with prejudice.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.2(D) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Petitioner is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date.

Petitioner is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 7th day of February, 2006.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE